473 So.2d 94 (1985)
John A. BENINATE
v.
Mary Matranga LICATA, Mary Lee Power, wife of/and Nicholas B. Licata, Jr.
No. 85-CA-61.
Court of Appeal of Louisiana, Fifth Circuit.
June 3, 1985.
Rehearing Denied August 16, 1985.
*95 Martin A. Welp, New Orleans, for Helen Whittenburg, wife of/and John A. Beninate, plaintiffs-appellants.
Jocelyn D. Guarisco, Metairie, for Mary Matranga Licata, Mary Lee Power, wife of/and Nicholas B. Licata, Jr., defendants-appellees.
Before CHEHARDY, GAUDIN and GRISBAUM, JJ.
CHEHARDY, Judge.
The only issue before us on this appeal is the effect of a suspensive appeal on the operation of a judgment to set off a debt.
Plaintiffs, the Beninates, filed suit by ordinary process to enforce a mortgage on property they had previously sold by credit sale to defendants, the Licatas. The Beninates alleged that the mortgage payment due September 4, 1983 was not made and that under the acceleration clause of the mortgage the entire unpaid balance became due, plus attorney's fees and costs.
The Licatas answered, admitting the sale and mortgage, but denying that a payment was due on September 4, 1983. The Licatas asserted the defense of compensation, claiming that a judgment in their favor against the Beninates in a separate proceeding operated to set off a portion of the balance due on their mortgage.
After a trial on the merits, the district court rendered judgment in favor of the Licatas, dismissing plaintiffs' suit at their *96 cost. In its reasons for judgment the court noted that the judgment pleaded as compensation was rendered on July 29, 1982 and suspensively appealed by the Beninates. It was affirmed by this Court on August 8, 1983 and writs were denied by the Supreme Court on November 18, 1983. The district court concluded that the affirmance and writ denial operated to make the judgment effective as a set-off on July 29, 1982, the date it was rendered by the district court. The Beninates filed a motion for new trial, which was denied.
The Beninates have appealed, arguing that due to their suspensive appeal the July 29, 1982 judgment did not become effective as a set-off until the Supreme court denied writs on November 18, 1983. Thus, urge the Beninates, no set-off was yet available to the Licatas in September 1983 and their failure to make the mortgage payment due that month was a default.
The Licatas argue that July 29, 1982 is the applicable date for set-off to apply because on that date the amount of the debt owed by the Beninates to the Licatas became liquidated, that is, fixed by the judgment. They contend the suspensive appeal of the July 1982 judgment did not suspend its effect as a set-off because the debt arose out of the interest set in the mortgage made the basis of this suit.
Under the July 1982 judgment, the Beninates were ordered to refund all interest payments the Licatas had made and to forfeit all future interest on the mortgage because the interest rate was found to be usurious under the law then in effect. The mortgage charged 15% annual interest at a time when the highest rate allowed under Louisiana law for this type of transaction was 12%. Some three weeks after the mortgage here was signed, federal legislation allowing the 15% interest became effective. That legislation was too late to affect the Licatas' right to sue under Louisiana usury law. We note that both the trial judge and this Court remarked in that case,
"`Again and again [Beninate] bent over backwards to accommodate [Licata] and assist [Licata] in acquiring the property he so much desired and yet seemingly could not afford. [Licata] quite obviously could not obtain financing from any other source. * * * It is hard to imagine how plaintiff was in any way "victimized" by the transactions herein. Nonetheless, the Court has no alternative but to apply the law as it was written at the time the contract was executed * * * on March 4, 1980.'"
Licata v. Beninate, 436 So.2d 1331, 1333 (La.App. 5 Cir.1983), writ denied 442 So.2d 446.
LSA-C.C.P. art. 2123 defines a suspensive appeal as "an appeal that suspends the effect or the execution of an appealable order or judgment." Once a suspensive appeal is perfected, execution of the judgment is suspended to the detriment of the creditor (thus the requirement for a bond on a suspensive appeal). "If a suspensive appeal never became viable the effect of the judgment is not suspended and the judgment creditor is free to proceed with execution of the judgment * * *." Willswood Plantation, Inc. v. Foret, 391 So.2d 1389, 1391 (La.App. 4 Cir.1980), writ refused 396 So.2d 898 (La.1981).
"The purpose of a suspensive appeal is to defer the effects of a judgment that could possibly be overturned until it is determined that the judgment will be upheld. It does not make all affirmative acts required of an appealing party relate back to the date of appeal. * * *"
Jackson v. Maloney Trucking & Storage, Inc., 442 So.2d 849, 853 (La.App. 4 Cir. 1983). See also, Norman v. Guarisco, 116 So.2d 872 (La.App. 1 Cir.1959).
Former Civil Code articles 2207, 2208 and 2209, in effect at the time the Licatas stopped payment on the mortgage, defined compensation and its effects:
"When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed." LSA-C.C. 2207.
"Compensation takes place of course by the mere operation of law, even unknown *97 to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums." LSA-C.C. 2208.
"Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable." LSA-C.C. 2209.
(Those articles were repealed and re-enacted as C.C. art. 1893 by Acts 1984, No. 331, Sec. 1, eff. Jan. 1, 1985.)
In order for compensation or setoff to be applicable, there must be the contemporaneous existence of distinct debts, each equally liquidated and demandable. West v. West, 438 So.2d 706 (La.App. 2 Cir.1983). Any final judgment can be used in setoff or compensation by the judgment creditor against a claim by the judgment debtor. Firmin v. Miller, 355 So.2d 977 (La.App. 3 Cir.1977). A judgment, however, may not be executed until after the delay for a suspensive appeal therefrom has elapsed. LSA-C.C.P. art. 2252. It is clear that the Beninates' debt to the Licatas, although "liquidated" (amount made certain) by the July 29, 1982 judgment, was not "demandable" because of the pending suspensive appeal. Therefore, the July 29, 1982 judgment did not satisfy the requirements of C.C. art. 2209 on September 4, 1982, the date on which the Licatas failed to make the payment then due on the mortgage note. Accordingly, it could not be used at that time to offset any portion of the balance.
See also: Hartley v. Hartley, 349 So.2d 1258 (La.1977); Charles v. Wiegand, 401 So.2d 1003 (La.App. 4 Cir.1981); Bank of Louisiana v. Argonaut Insurance Company, 248 So.2d 349 (La.App. 4 Cir.1971).
We find no merit to the Licatas' arguments. The first three arguments, that the appellants failed to prove the amount of money due on September 4, 1983, that the Licatas owed nothing on September 4, 1983 because their prior payments were in excess of the amount owed and because the Beninates owed them return of the interest already paid, and that the suspensive appeal of the July 29, 1982 judgment does not affect the Licatas' right to set-off because that judgment arises from the mortgage sued upon, are refuted by our determination of the effect of the suspensive appeal. The fourth argument, that the Beninates attempted to create a default after filing suit by returning the payments made by the Licatas, is without merit because the default arose simply from the Licatas' failure to make the payment then due under the mortgage. Pending determination of the suspensive appeal, the Licatas should have paid the amount they had previously been paying every month.
Accordingly, we find plaintiffs are entitled to judgment accelerating the mortgage balance, plus legal interest, and to attorney's fees. However, the attorney's fees were fixed in the note and mortgage at 25% of the amount due upon default. In Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), the Supreme Court ruled that courts may inquire into the reasonableness of attorney fees fixed in a note by the parties as a percentage of the amount due upon default of the debtor. The court further stated that although parties are permitted to contract with respect to attorney's fees, attorney's fees are subject to review and control by the courts.
We find that $14,000, the amount equal to 25% of the principal due on the note herein, is an excessive fee in view of the amount of work required in this lawsuit. Accordingly, we fix the attorney's fee at $5,000, which we find reasonable considering the amount of time and labor involved, the complexity of the issues and the requisite legal skill to perform the services.
For the foregoing reasons, the judgment of the district court is reversed and recast as follows:
IT IS ORDERED that there be judgment in favor of plaintiffs, HELEN WHITTENBURG, wife of/and JOHN A. BENINATE, *98 and against defendants, MARY MATRANGA LICATA, MARY LEE POWER, wife of/and NICHOLAS B. LICATA JR., in the amount of FIFTH-NINE THOUSAND FIVE HUNDRED FIFTY-FIVE AND SIXTY-HUNDREDTHS ($59,555.60) DOLLARS, together with legal interest thereon from date of judicial demand until paid, and for attorney's fees in the amount of FIVE THOUSAND AND NO HUNDREDTHS ($5,000.00) DOLLARS, and for all costs of these proceedings.
IT IS FURTHER ORDERED that the mortgage and vendor's privilege in favor of HELEN WHITTENBURG, wife of/and JOHN A. BENINATE upon the real property described in the Act of Credit Sale passed before Martin A. Welp, Notary Public, dated March 4, 1980, registered in C.O.B. 979, folio 54, recorded in M.O.B. 792, folio 236, Parish of Jefferson, is hereby recognized and made enforceable, to-wit:
SIX CERTAIN LOTS OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, in Country Club Gardens Subdivision, a re-subdivision of a portion of Section D, Elmwood Subdivision, in Block One thereof, bounded by Westside Drive, Kathrine Drive, the Southern boundary line of a 50-foot right-of-way in favor of United Gas Pipeline Company and Behrman Highway, designated Lots Nos. 1, 2, 3, 4, 5 and 6, which lots adjoin each other and measure each 25 feet front on Westside Drive, same in width in the rear, by a depth of 100 feet between equal and parallel lines, Lot No. 1 forming the corner of Westside Drive and Behrman Highway. All in accordance with a plan by Hotard & Webb, Civil Engineers, dated July 3, 1952, annexed to an Act of Dedication before Robert Emmet Mahoney, Notary Public, dated July 28, 1952, registered in COB 323, folio 259, Entry No. 1170, Parish of Jefferson.
LESS AND EXCEPT the following described property sold by John A. Beninate to the Louisiana State Highway Department on December 15, 1971, by act of sale recorded in COB 753, folio 297, Entry No. 545706, Parish of Jefferson: A certain tract or parcel of land together with all of the improvements thereon and all rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana and in Section 30, Township 14 South, Range 24 East, Southeastern Land District of Louisiana, West of the Mississippi River, identified as Parcel No. 4-2 on the Property Survey Map for the Behrman Road Highway, State Project No. 410-02-09, Route La. 428, Jefferson Parish, Louisiana, prepared by Joffrion and Associates, Inc., Consulting Engineers, dated March 2, 1971, said map being on file in the office of the Department of Highways, in the City of Baton Rouge, Louisiana, the boundary lines of which tract are more particularly described as follows:
PARCEL NO. 4-2:
Commence at the intersection of the Northerly existing right-of-way limits of Westside Drive and the Easterly existing right-of-way limits of La. 428 and Vendor's Southwest property corner, which point is the point of beginning; thence from the point of beginning, proceed North, 03° 40' 25" East, along the Easterly existing right-of-way limits of La. 428 and Vendor's Westerly boundary line, running parallel to and 40 feet East of the centerline of said state project a distance of 25.00 feet to a point on the required right-of-way line of said state project; thence South 41° 19' 35" East, along said required right-of-way line, traversing Vendor's property, a distance of 35.36 feet to a point on the Northerly existing right-of-way limits of Westside Drive and Vendor's Southerly boundary line; thence North, 86° 19' 35" West, along the northerly existing right-of-way limits of Westside Drive and Vendor's Southerly boundary line a distance of *99 25.00 feet to the point of beginning and containing 312.5 square feet.
The bearings shown are true to bearings as determined by observation of Polaris, left of Station 201 + 74.62.
And all in accordance with a survey by Gerald B. Dunn, Surveyor, dated August 27, 1979, attached hereto.
Being a portion of the same property acquired by John A. Beninate from Vincent A. Beninate, by act of sale passed before Yvonne Tingstrom Welp, Notary Public, on March 28, 1962, registered in COB 550, folio 697, Entry No. 227-763, Parish of Jefferson, on April 6, 1962.
REVERSED, RECAST AND RENDERED.